**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000347
31-DEC-2013
08:03 AM**

NO. CAAP-13-0000347

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

JOSEPH K. CHANDLER, Appellant-Appellant,
v.
EMPLOYEES' RETIREMENT SYSTEM,
STATE OF HAWAI'I, Appellee-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 12-1-002300)

MEMORANDUM OPINION
(By:  Foley, Presiding J., Fujise and Leonard, JJ.)

Appellant-Appellant Joseph K. Chandler (Chandler) appeals from the March 6, 2013 "Order Dismissing with Prejudice Appellant Joseph K. Chandler's Appeal" (Order Dismissing) entered in the Circuit Court of the First Circuit[1] (circuit court).  The Order Dismissing, which was reduced to a Final Judgment on April 8, 2013, affirmed a decision by the Board of Trustees of the Employees' Retirement System of the State of Hawai'i (ERS Board) in favor of Appellee-Appellee Employees' Retirement System of the State of Hawai'i (ERS).

Chandler contends the circuit court erred by affirming the following ERS Board actions:

(1) failing to determine that Chandler's medical condition qualified for disability retirement benefits under Hawaii Revised Statutes (HRS) § 88-284 (Repl. 2012);

---

[1]  The Honorable Rhonda A. Nishimura presided.

(2) rejecting Chandler's supplemental medical exhibits, which he prepared as a pro se party;

(3) finding that determinations by the U.S. Social Security Administration's Office of Disability Adjudication and Review (SSA) and other medical examiners did not establish that Chandler's incapacity is likely to be permanent; and

(4) other errors of law affecting Chandler's request for ordinary disability retirement benefits.

## I.   BACKGROUND

Chandler (born 1964) was employed by the State of Hawai'i, Department of Education as a Custodian II at Keaau High School.

On July 2, 2009, Chandler submitted his application for ordinary disability retirement to ERS.  On July 9, 2009, ERS acknowledged receipt of Chandler's application for ordinary disability retirement benefits, noting that he was required to submit a statement of an examining physician.  ERS received the needed statement from Douglas C. Olsen, M.D. (Dr. Olsen) on July 23, 2009.  Dr. Olsen's report, dated July 2, 2009, states: (1) Chandler should be permanently relieved from his duties; (2) he will be prevented from performing duties for his present employment for the remainder of his life; and (3) retirement is recommended, noting that he is "[u]nable to perform the physical demands of employment - lifting/carrying/pushing/pulling bending/stooping."  At that time, Dr. Olsen had served as Chandler's primary care physician for over four years, since 2006.

On October 28, 2009, Chandler wrote to State of Hawai'i, Hawai'i Employer-Union Health Benefits Trust Fund (EUTF), alerting the agency that he had not received a response to his ERS application for seven months, lacked medical insurance, and could not pay for prescribed medications, a list of which was attached to his letter to EUTF.

On February 16, 2010, Florian Flores (Flores), a

2

physical therapist and Director of Hawai'i FCE and Rehabilitative Services, submitted an occupation specific functional capacity evaluation (FCE) based on a 6.45 hour examination of Chandler on February 12, 2010 to the ERS Medical Board (Medical Board). Flores' FCE described work factors covered in the assessment as "Musculoskeletal, Repetitive Movement, Static Strength, Hand Function, Material/Non-Material Handling and Task simulations," and did not indicate that any psychological assessments were conducted. Flores stated that Chandler "can work at LIGHT PDL [physical demand level] for an 8-hour day" and noted, "[t]he maximum physical requirement for School Custodian II, DOE is 50 lbs or greater. I believe it is unlikely that [Chandler] will be able to achieve this material handling ability and return to full time, full duty work as School Custodian II with any type of work hardening/conditioning program."

On March 10, 2010, ERS received a Lumbar Spinoscope Evaluation report from Robert L. Smith, M.D. (Dr. Smith), who examined Chandler on February 12, 2010 and concluded:

> Since [Chandler] is only 45 and approximately 100 pounds overweight he would benefit from a restricted calorie but fully nutritious diet such as documented by Dr. Shintani locally and self directed reactivation and reconditioning at a community based fitness center. Psychosocial barriers may include fear avoidance behaviors, lack of motivation and non-compliance.

On March 10, 2010, the Medical Board received a letter dated March 10, 2010 from Flores, stating:

> I reviewed Mr. Chandler's FCE and Spinoscope reports per your request. I conclude that if [Chandler] is able to successfully lose at least 50 lbs of body weight following the Shintani diet per Dr. Robert Smith's recommendation, he will be more likely than not to achieve the physical demand capacity of MEDIUM (50 lbs) and recover full time, full duty work as School Custodian through extensive work conditioning/work hardening.

Also on March 10, 2010, the Medical Board completed its report, certifying Chandler as "physically or mentally incapacitated for further performance of duty[,]" but that his

3

incapacitation is not likely to be permanent and he should not be retired.

On April 21, 2010, the ERS Board sent a letter to Chandler apprising him of their April 12, 2010 decision to deny his application for ordinary disability retirement.

In a letter with the subject heading "Ordinary Disability Retirement Appeal," received on May 17, 2010, Chandler urged the ERS Board to consider reports from Rudolph Puana, M.D. (Dr. Puana) and Dr. Olsen. Chandler noted that ERS Benefits Manager, Karl Kaneshiro (Kaneshiro), informed him that the Medical Board made its decision prior to receiving Florian Flores' reports and that he could not review these medical reports unless he filed an appeal. Chandler does not specify if Kaneshiro was referring to Flores' March 10, 2010 report alone or in combination with his February 16, 2010 FCE. Chandler attached a report by Dr. Puana dated May 3, 2010, which stated Chandler's "pain is very debilitating due to extreme spinal cord involvement" and he would be absent even from a part-time job three or more days a month if he attempted such employment. In response to the question, "Do you feel that [Chandler] is accurately describing his complaints of pain?[,]" Dr. Puana answered affirmatively and further opined that Chandler's symptoms are documented and credible.

On June 29, 2010, ERS assigned hearings officer duties over Chandler's appeal to Mario R. Ramil. On September 1, 2010, Hearings Officer Ramil responded to Chandler's concern that he could neither afford an attorney nor airfare to and from Honolulu for a hearing. Hearings Officer Ramil proposed to address his appeal via submissions of additional medical reports and written arguments, thereby obviating the need to hold a "face-to-face" hearing.

On September 7, 2010, Frank Ury, the attorney who represented Chandler in proceedings related to his SSA disability claim, submitted a copy of a SSA Decision dated May 18, 2010 to

4

the ERS. The SSA Decision found Chandler "disabled under sections 216(i) and 223(d) of the Social Security Act since December 31, 2007." SSA found Chandler's statements concerning the intensity, persistence, and limiting effects of these symptoms [of medically determinable impairments] are generally credible." SSA also noted:

> [t]he State agency medical consultants' physical assessments and psychological consultants' mental assessments are given little weight because other medical opinions are more consistent with the record as a whole and evidence received at the hearing level show that [Chandler] is more limited than determined by the State agency consultants. Greater weight is afforded the opinions of Drs. Olsen and Puana as they have established a treatment relationship with [Chandler]. Their opinions are further supported by the comprehensive psychological assessment of Dr. Bratton, who determined that [Chandler] is not able to meet the normal demands of a low stress job on a daily basis, 'due to a combination of an existing bipolar disorder, now expressed as depression, along with cumulative effects of multiple closed head traumas.'

The SSA Decision does not identify the State agency medical consultants it refers to and did not append their physical or psychological assessments.

On September 13, 2010, Hearings Officer Ramil wrote to the Medical Board and Chandler, stating that Chandler had waived his right to a face-to-face hearing and proposing a schedule whereby Chandler would provide the Hearings Officer and Medical Board counsel with additional supporting documents by October 15, 2010 and the Medical Board would respond to the submissions by November 15, 2010.

On September 28, 2010, the Aloha Pain Clinic, LLC, which employed Dr. Puana, submitted to the ERS Board, chart notes from examinations of Chandler on April 16, 2010, May 3, 2010, and July 21, 2010 and a history and physical report dated March 30, 2010.

On October 6, 2010, Hearings Officer Ramil forwarded a letter from Chandler with attached documents to Medical Board counsel: (1) the SSA Decision dated May 18, 2010; (2) medical

documents from Dr. Puana; (3) medical records from Dr. Olsen; and (4) a notice of continuance of sale in connection with a foreclosure action on Chandler's home.

On November 15, 2010, the Medical Board filed its Position Memorandum in support of its certification that Chandler is not permanently disabled and should not be retired. The Position Memorandum indicated that the Medical Board's determination relied on Flores' and Dr. Smith's reports and Dr. Olsen's medical records.

In a November 20, 2010 email, Hearings Officer Ramil informed ERS manager, Karl Kaneshiro, that he had recused himself from hearing Chandler's appeal due to a telephone interaction with Chandler. On June 30, 2011, the ERS wrote to Junell Y. K. Lee, to inform her that ERS had reassigned hearings officer duties over Chandler's appeal to her and noted that Chandler had acquired representation by counsel as of March 30, 2011.

Hearings Officer Lee held a telephone conference with the parties on August 11, 2011 in which Chandler's request for a full evidentiary hearing was denied but Chandler was granted an opportunity to write a rebuttal to the Medical Board's November 15, 2010 Position Memorandum.

On October 3, 2011, Hearings Officer Lee received Chandler's Position Memorandum, to which were appended three exhibits: (1) a copy of Chandler's general work assignments at Keaau High school; (2) medical records from SSA's file on Chandler's application; and (3) a summary of Chandler's medical absences from work.

Chandler's exhibits included:

(1) Dr. Olsen's chart notes from dates including, May 22, 2007, May 29, 2007, June 25, 2007, July 16, 2007, July 31, 2007, August 13, 2007, September 20, 2007, October 25, 2007, October 29, 2007, November 6, 2007, December 10, 2007, December, 20, 2007, December 27, 2007, January 25, 2008, March 7, 2008, March 11, 2008, February 28, 2008, April 24, 2008, May 19, 2008, May 29, 2008, June 9, 2008, June 23, 2008, July 1, 2008, July 15,

2008, July 11, 2008, July 29, 2008, September 4, 2008, September 16, 2008, February 3, 2009, February 22, 2009, May 12, 2009, and July 2, 2009;

(2) work slips excusing Chandler from work duties on associated dates;

(3) Dr. Olsen's summaries of prescription medications Chandler was taking and a February 22, 2009, physician summary view;

(4) records of a December 18, 2007 visit with Kenneth T. Kaan, M.D. (Dr. Kaan);

(5) records of a May 12, 2008 examination by Todd Thompson, M.D. recommending physical therapy and x-rays;

(6) records of a December 11, 2009 examination by Lyla Prather, M.D., who stated Chandler "would likely tolerate sedentary to occasional mild activity without much difficulty. He should refrain from prolonged walking, or from carrying/lifting/pushing/ pulling more than light loads to prevent further worsening of his back pain[]";

(7) records of a November 14, 2008 full psychological evaluation by Joseph Bratton, Ph.D. (Dr. Bratton);

(8) records of a February 26, 2009 examination by Antoine Cazin, M.D. (Dr. Cazin), regarding Chandler's complaints of low back pain, epilepsy, and depression; and

(9) radiologic reports dated August 13, 2007, November 16, 2007, February 21, 2008, July 11, 2008, July 30, 2008.

In Exhibit 2, medical evidence supporting the SSA Decision, included a report from a disability claims examiner based on a February 26, 2009 examination by Dr. Cazin, noting that Chandler's main complaints were low back pain, "[e]pilepsy," and depression. Dr. Cazin stated,

> [b]ecause of his chronic low back pain, [Chandler] is very uncomfortable doing any work-related activities and also not doing any activity since he states that recently for four nights he was 'screaming all night' because of pain. Otherwise, there is no physical limitation to the working ability of [Chandler] demonstrated by today's examination.

7

In a letter dated October 4, 2011 to Hearings Officer Lee, the Medical Board objected to Chandler's exhibits because they "go[] beyond the record and beyond the scope of the Medical Board's position statement[.]" The Medical Board further noted that it had not been made aware that there may have been a psychiatric/psychological component to Chandler's disability and, "[e]xcept for pages 2-7 of exhibit 2, none of the other records were provided to the Medical Board for review at any time."

On December 12, 2011, Hearings Officer Lee submitted her Recommended Decision. The Recommended Decision stated the August 11, 2011 Order permitting Chandler to submit a written rebuttal to the Medical Board's Position Memorandum did not also permit Chandler to submit additional evidence and therefore his three exhibits were inadmissible and not considered by Hearings Officer Lee. "By attaching Exhibits "1" through "3" to his Position Memorandum, [Chandler] is trying to sneak in additional evidence almost one year after his October 15, 2010 deadline lapsed [the deadline for the Medical Board's Position Memorandum]."

Hearings Officer Lee's Recommended Decision reasoned that the Medical Board and SSA could reach different decisions on Chandler's disabled status because: (1) the Medical Board and SSA use different criteria; (2) SSA considered Chandler's psychiatric evaluation by Dr. Bratton on November 14, 2008, while the Medical Board did not have records of Chandler's psychiatric problems before it; and (3) SSA's "disability" determination did not establish that Chandler's disability is likely to be permanent.

On February 3, 2012, Chandler filed exceptions to the ERS Board's proposed decision, again submitting his three exhibits. Chandler argued he had been proceeding pro-se at the time he was expected to file his exhibits and that it was "unrealistic" and "unfair" to expect him to have analyzed the applicable rules, requirements, and procedures, and further contended that "Hearings Officer [Lee] relied on a technicality

8

to exclude material and relevant evidence to avoid the merits" of his claim.

On May 31, 2012, the Medical Board filed its response to Chandler's exceptions to the ERS Board's proposed decision, requesting the ERS Board adopt Hearings Officer Lee's Recommended Decision in toto. The Medical Board contested the characterization of Chandler as "unable to understand his responsibilities" because he complied with deadlines for submitting evidence and position letters.

On June 12, 2012, the ERS Board heard arguments from the parties on Chandler's appeal in Honolulu. Because the proceeding was an "appeal as opposed to a hearing," Chandler was not permitted to speak on his own behalf. On August, 6, 2012, ERS Board affirmed the proposed decision and adopted the Recommended Decision.

On September 6, 2012, Chandler filed a notice of appeal to the circuit court requesting reversal of the ERS Board's August 6, 2012 Final Decision (Final Decision), a grant of ordinary disability retirement benefits, and attorneys' fees.

In his opening brief, filed November 5, 2012, Chandler raised the same points of error before the circuit court that he has raised on appeal to this court.

On February 20, 2013, the circuit court heard arguments from the parties. The circuit court concluded, "based upon what was submitted and the record on appeal, the [circuit court] cannot say that [Hearings Officer Lee's] decision was clearly erroneous . . . ." On the issue of Hearing Officer Lee's Recommended Decision to exclude Chandler's three exhibits, the circuit court noted,

> [Hearings Officer Lee] does mention that although technical
> exactness may not be required of pro se litigants,
> submitting 97 pages of additional evidence almost one year
> after the submission deadline, after a ruling has already
> been made denying the introduction of additional evidence,
> is way beyond the back-bending afforded pro se litigants,
> especially since the medical board no longer has the
> opportunity to respond to such additional evidence.

9

Further noting the lack of "case law that fleshes out that particular phrase 'likely to be permanent'" in HRS § 88-284(a)(2), the circuit court reasoned, "so it's up to the hearings officer and the medical board to determine whether or not his physical incapacity's likely to be permanent." The circuit court affirmed the ERS Board's Final Decision because it "[could] not say that [Hearings Officer Lee's Recommended D]ecision was clearly erroneous in view of the reliable, probative, substantial evidence and what was admissible on the whole record."

On March 6, 2013, the circuit court issued an order dismissing Chandler's appeal, which effectively affirmed the ERS Board's Final Decision. On March 31, 2013, Chandler filed a notice of appeal from the circuit court's order.

## II.  STANDARDS OF REVIEW

Appellate review of agency decisions is governed by HRS § 91-14(g) (2012 Repl.), which states that:

> Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1) In violation of constitutional or statutory provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the agency; or
>
> (3) Made upon unlawful procedure; or
>
> (4) Affected by other error of law; or
>
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Agency decisions carry a presumption of validity and this "presumption is particularly significant where the appellant

10

challenges a substantive decision within the agency's expertise as 'clearly erroneous,' 'arbitrary,' 'capricious,' or an 'abuse of discretion[.]'" In re Water Use Permit Applications, 94 Hawai'i 97, 143, 9 P.3d 409, 455 (2000).

"An agency's findings of fact are reviewable under the clearly erroneous standard to determine if the agency decision was clearly erroneous in view of reliable, probative, and substantial evidence on the whole record." Poe v. Hawai'i Labor Relations Bd., 87 Hawai'i 191, 195, 953 P.2d 569, 573 (1998). Generally, findings of fact will not be set aside unless clearly erroneous. "[Such] findings are presumed to be correct, and appellant bears the burden of pointing out specifically where they were erroneous." MPM Hawaiian, Inc. v. Amigos, Inc., 63 Haw. 485, 486, 630 P.2d 1075, 1077 (1981). "[U]nchallenged factual findings are deemed to be binding on appeal, which is to say no more than that an appellate court cannot, under the auspices of plain error, sua sponte revisit a finding of fact that neither party has challenged on appeal." Okada Trucking Co., Ltd. v. Bd. of Water Supply, 97 Hawai'i 450, 459, 40 P.3d 73, 82 (2002).

"An agency's conclusions of law (COLs) are freely reviewable to determine if the agency's decision was in violation of constitutional or statutory provisions, in excess of statutory authority or jurisdiction of agency, or affected by other error of law." Poe, 87 Hawai'i at 195, 953 P.2d at 573.

Except as otherwise provided by law, the party who initiates an appeal proceeding bears the burden of proof, including the burden of producing evidence and the burden of persuasion. Hoffacker v. State Farm Mut. Auto. Ins. Co., 101 Hawai'i 21, 24, 61 P.3d 532, 535 (App. 2002). "The degree or quantum of proof shall be a preponderance of the evidence." Id. "[T]he party initiating the proceeding shall have the burden of proof, including the burden of producing evidence and the burden of persuasion[,]" and the "degree or quantum of proof shall be a

preponderance of the evidence." Hawaii Administrative Rules (HAR) Rule § 6-23-31 (2009).

## III. DISCUSSION

### A. ERS Board's findings related to the May 18, 2010 SSA Decision do not constitute reversible error.

Chandler's contention that Hearings Officer Lee's findings concerning SSA's Decision constituted reversible error has no merit. Hearings Officer Lee did not err in finding: (1) no evidence demonstrates that SSA and ERS ordinary retirement benefit eligibility criteria are the same; (2) SSA's "disability" determination did not establish that Chandler's disability is likely to be permanent under HRS § 88-284(a)(1); and (3) medical evidence contained in SSA's Decision, in and of itself, did not establish Chandler's incapacity to be permanent.

To qualify for social security disability benefits, Chandler was required to demonstrate that he suffered from a "medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2004). By contrast, ERS required Chandler to show he is likely to be permanently incapacitated in order to qualify for ordinary disability retirement. See HRS § 88-284(a)(1). Hearings Officer Lee correctly found SSA's determination that Chandler is "disabled" is not conclusive evidence that he met eligibility requirements for ERS ordinary disability retirement benefits.

ERS hearings officers are afforded broad powers and duties, which includes "rul[ing] on offers of proof and receiv[ing] evidence[.]" HAR § 6-23-14(b)(6). Contrary to Chandler's contention that Hearings Officer Lee's findings of fact 29, 30, and 31 constituted reversible error, we conclude that she acted within her discretion in determining that SSA's Decision did not contain medical evidence establishing Chandler's incapacity to be permanent.

12

**B.    ERS's interpretations of "the time of [Chandler's] application" are inconsistent.**

This court defers to an agency's interpretation of the statutes they administer, unless that interpretation "is plainly erroneous and inconsistent with both the letter and intent of the statutory mandate[.]" Kahana Sunset Owners Ass'n v. Cnty. of Maui, 86 Hawai'i 66, 72, 947 P.2d 378, 384 (1997).  Under HRS § 88-284(a)(1), Chandler was required to show that he was "mentally or physically incapacitated for the further performance of duty at the time of application[.]"  (Emphasis added.)  Citing this provision in its November 15, 2010 Position Memorandum, the Medical Board contended, "[m]edical records post application should not be considered."  The Medical Board defended its decision, insofar as findings relied upon medical records that were contradicted by reports from Drs. Olsen and Puana.  Drs. Olsen and Puana's medical reports were based on treatments on March 30, 2010, April 16, 2010, May 3, 2010, and July 21, 2010, whereas Mr. Chandler's application is dated July 2, 2009.

We note the "time of application" requirement must necessarily allow some time to pass between the application and the physical examination that the Medical Board may require of applicants under ERS rules.  See HAR § 6-22-3(b).  In this case, the Medical Board relied on FCEs based on examinations of Chandler conducted February 12, 2010.

On appeal, ERS now contests a claim they attribute to Chandler, "[i]nasmuch as [Chandler] does claim that the Hearing[s] Officer erred in not considering his medical records dated on or after July 3, 2009, the Hearings Officer [Lee] did not err, as she properly followed HRS § 88-284 . . . ."  ERS's contentions on appeal and ERS Board's affirmation of the Medical Board's certifications raise the question: are the medical reports based on examinations of Chandler after July 2, 2009 properly considered as evidence of his physical and mental condition "at the time of application" or not?  Read together

13

with the Medical Board's determination that the March 30, 2010, April 16, 2010, May 3, 2010, and July 21, 2010 reports by Drs. Olsen and Puana were too late to be considered "at the time of application[,]" ERS's contention on appeal that Hearings Officer Lee properly considered medical records dated after July 3, 2009 provides an overly narrow interpretation of HRS § 88-284(a)(1).

"[A]t the time of application" is not statutorily defined; we may therefore attribute to this phrase its ordinary meaning. See Gillan v. Gov't Employees Ins. Co., 119 Hawai'i 109, 115, 194 P.3d 1071, 1077 (2008). In this case, the ordinary meaning of "at the time of application[,]" read in light of regulatory provisions permitting the Medical Board to require and rely on medical examinations of the applicant during a post-application period, includes examinations completed during a reasonable period pre- and post-dating Chandler's July 2, 2009 application.

### C. Hearings Officer Lee's exclusion of Chandler's untimely exhibit submissions

Chandler contends the ERS Board's Final Decision upholding Hearings Officer Lee's Recommended Decision constituted reversible error because the preponderance of the evidence clearly established Chandler's entitlement to ordinary disability retirement benefits. As discussed below, whether Hearings Officer Lee, the ERS Board, and the circuit court clearly erred by failing to find the preponderance of the evidence supporting Chandler's disability benefits claim is bound up with Chandler's claim that Hearings Officer Lee's refusal to consider his exhibits was an error amounting to a denial of his substantive rights.

In applying for ordinary disability retirement benefits, Chandler was responsible for "furnishing all medical evidence available or which can be made available to [Chandler] pertaining to [his] disability, including reports of [his]

14

personal physician and consultant physicians, hospital and laboratory reports, and x-rays." HAR § 6-26-7(a). The Medical Board is responsible for reviewing medical reports submitted to them and may disregard untimely submitted medical reports. HAR §§ 6-22-3(a) and (b). After submitting its own certifications and findings, the Medical Board is permitted to consider additional medical reports "[u]pon receipt of prior approval of the [ERS] board," and under the condition that the additional medical reports "relate to the condition of the member at the time of the application and any determination of disability shall be related to the condition of the member at the time of application." HAR § 6-22-10.

While these provisions govern our review of Hearings Officer Lee's Recommended Decision to exclude Chandler's tardily submitted medical evidence, Chandler urges us to allow a "good faith effort exception in administrative agency matters" in light of Chandler's pro se status. (Citing Dupree v. Hiraga, 121 Hawai'i 297, 314, 219 P.3d 1084, 1101 (2009)) ("Pleadings prepared by pro se litigants should be interpreted liberally.").

It is undisputed that Chandler was not represented in ERS claim proceedings until approximately March 30, 2011. ERS contested the characterization of Chandler as "unable to understand his responsibilities" because he complied with deadlines for submitting evidence and position letters. "[Chandler] complied with those deadlines and he did in fact submit additional medical records along with a position letter, and I believe that that shows that he understood what was required of him in this process." Chandler's compliance with deadlines, however, does not demonstrate that he understood how the legal standard of the "preponderance of the evidence" applied to his case nor the legal distinction between "disabled" statuses under SSA and ERS criteria. For this reason, ERS's allegation that "[Chandler] has not set forth a reason why he did not submit the medical records that he now wants included in the record[,]"

15

demonstrates their misunderstanding of the effect of Chandler's pro se status. Chandler contends the reason he did not submit medical records to supplement the SSA Decision and reports from Drs. Olsen and Puana, is that he did not know that a SSA finding of disability differed from an ERS finding of disability under HRS § 22-484.

Chandler contends that a liberal interpretation of his application and appeal from the Medical Board's certification would have anticipated his ignorance of the distinction between SSA and ERS disability requirements and therefore Hearings Officer Lee should have accommodated his later efforts to supplement the record.

According to the schedule set by Hearings Officer Ramil, Chandler was permitted to submit additional evidence until October 15, 2010 and the Medical Board would file their response by November 15, 2010. Hearings Officer Lee explained her decision to exclude Chandler's medical evidence: (1) his submissions were untimely; (2) they were not provided for in the August 11, 2011 Order; and (3) the Medical Board was not afforded an opportunity to respond to Chandler's new evidence.

The Medical Board's November 15, 2010 Position Memorandum contained citations to facts and a detailed legal argument supporting the Medical Board's rejection of the SSA disability findings. The Medical Board's cursory medical report filed on March 15, 2010 preceded this submission and summarily stated that Chandler's incapacity is not likely to be permanent and he should not be retired. Chandler was not able to review Flores' medical reports until he filed his appeal from the Medical Board's report. Although Chandler was permitted to respond to the Medical Board's November 15, 2010 position statement, Hearings Officer Lee did not permit him to submit medical evidence with that response. "If a party has not had any opportunity to respond to an argument made for the first time in the last permitted paper, an additional paper, whether reply or

surreply, may be allowed." David F. Herr, et al., § 3.08 Reply Papers, Motion Prac. (2013). Allowing further responses is "necessary to prevent ambush" of the party receiving the new information. Id. The underlying purpose of "prevent[ing] ambush[,]" would therefore not be served unless Chandler could have gleaned from the medical report and supporting documents, that he was responsible for submitting medical evidence of a disability under two separate agency standards. Id. As Chandler contends, expecting a pro se litigant to have understood the legal distinctions between the evidentiary weight of his submissions in an SSA as opposed to an ERS proceeding is unrealistic. Viewed in light of his then-pro se status, Chandler's Position Memorandum and its attached exhibits appropriately took up an opportunity to respond to the Medical Board's reliance on Flores' findings and differences between the SSA and ERS criteria.

Agency proceedings are meant to have relatively less rigid procedural and pleading processes than formal trials. See Cariaga v. Del Monte Corp., 65 Haw. 404, 409, 652 P.2d 1143, 1147 (1982) ("[t]he administrative tribunal or agency has been created in order to handle controversies arising under particular statutes. It is characteristic of these tribunals that simple and non-technical hearings take the place of court trials and informal proceedings supersede rigid and formal pleadings and processes.").

We do not reverse an agency's decision based on procedural matters unless those errors affected the substantial rights of the appellant. See Application of Wind Power Pac. Investors-III, 67 Haw. 342, 343, 686 P.2d 831, 832-33 (1984) (refusing to reverse a Public Utilities Commission decision based on procedural irregularities because the irregularities complained of do not prejudice the substantial rights of the appellant) (citing HRS § 91-14(g)); Survivors of Timothy Freitas, Dec. v. Pac. Contractors Co., 1 Haw. App. 77, 85, 613 P.2d 927,

933 (1980) (Labor and Industrial Relations Appeals Board's failure to state whether it had applied presumption that claim was for covered work injury did not prejudice substantial rights where there was no reasonable doubt that employee's fatal accident was not work connected) (citing HRS § 91-14(g)).

ERS asserts that even if Hearings Officer Lee erred by excluding Chandler's evidence, such an error was "harmless" because she, and the ERS Board, could have reasonably reached the same conclusions as they did if they had considered Chandler's exhibits. According to the ERS, because the excluded exhibits would not affect the conclusion that Chandler failed to establish his incapacity is likely to be permanent, the exclusion of these exhibits did not affect Chandler's substantial rights and therefore this court should not reverse the circuit court's order. See HRS § 91-14(g).

Chandler's excluded exhibits include a letter from Dr. Kaan to Dr. Olsen, dated December 18, 2007, indicating that Chandler had been out of work for a month and was suffering increasing pain. Although ERS correctly notes that Dr. Kaan recommended nonoperative treatment, a weight reduction program, and physical therapy, Dr. Kaan also stated, "[a]s a last resort, we can consider doing an L4-5 interbody fusion, but there is no guarantee as to whether this would alleviate his symptoms." (Emphasis added.) Dr. Kaan's statement suggests nonsurgical treatment was recommended because the prognosis after surgical treatment is not "guarantee[d.]" Dr. Kaan's report does not, as ERS contends, support a finding that Chandler does not suffer a permanent incapacitation.

Chandler's Exhibit 2 included Dr. Bratton's psychological assessment, which SSA relied upon. ERS Board emphasizes Dr. Bratton's conclusion that Chandler "could attend regularly a low stress job site" as evidence that Chandler was not incapacitated for non-psychologically stressful employment. ERS attributes significance to Dr. Bratton's psychological report that contradicts Hearings Officer Lee's interpretations.

Hearings Officer Lee concluded that the <u>absence</u> of Dr. Bratton's report from materials available for the Medical Board review was a reason that it reached a different conclusion from that of SSA. Between the ERS Board and Hearings Officer Lee's conclusions, the import of Dr. Bratton's report is, alternately, that it shows Chandler is not incapacitated for low stress work, and that it would have shown the Medical Board evidence that Chandler is "disabled" and therefore would have brought the Medical Board's conclusion closer towards SSA's disability findings. Further, while SSA findings of disability are not binding on the Medical Board, we note SSA also reached a conclusion contrary to ERS Board's interpretation of Dr. Bratton's report. <u>See</u> HAR § 6-22-5. Rather than concluding, with ERS, that Dr. Bratton's report showed Chandler's <u>capacity</u> for low stress employment, SSA concluded that Dr. Bratton's "comprehensive psychological assessment . . . determined that [Chandler] was not able to meet the normal demands of a low stress job on a daily basis, 'due to a combination of an existing bipolar disorder, now expressed as depression, along with cumulative effects of multiple closed head traumas.'" The inconsistent weight given to Dr. Bratton's report by the ERS Board and Hearings Officer Lee, in addition to SSA's fuller citation to Dr. Bratton's report, supports the conclusion that the ERS incorrectly asserts that Dr. Bratton's statements sustain a finding that Chandler is not permanently incapacitated.

ERS Board misrepresents Dr. Cazin's medical report, which was based on his examination of Chandler on February 26, 2009. The ERS Board characterizes Dr. Cazin's report by stating, "but for [Chandler's] lower back pain, 'there is no physical limitation to the working ability of [Chandler.]'" Dr. Cazin's quoted statement, however, is preceded by the following:

> The patient does not have medical insurance anymore since he last [*sic*] his job. This is an abnormal and unjust and very damaging situation for the patient. It should be corrected immediately.
>
> <u>MEDICAL STATEMENT</u>:

19

Because of his chronic low back pain, [Chandler] is very uncomfortable doing any work-related activities and also not doing any activity since he states that recently for four nights he was 'screaming all night' because of pain.

Otherwise, there is no physical limitation to the working ability of the patient demonstrated by today's examination.

Although Dr. Cazin was not asked to comment on Chandler's financial or insurance situation, a more extensive quotation from his report shows Dr. Cazin's statement that Chandler had "no physical limitation" was offered in the context of a more general opinion concerning the immediacy of the need for resources to be devoted to relieving Chandler's discomfort and pain. Dr. Cazin's overall assessment of Chandler's condition rather supports a conclusion contrary to that urged by the ERS Board.

Finally, ERS contends "[t]he records not considered by the ERS Board and the Hearing[s] Officer . . . mirror the records considered by the Hearing[s] Officer." The ERS cites opinions offered by Flores, Dr. Smith, and Dr. Puana that Chandler should lose weight as evidence supporting its contention of harmless error. Neither Dr. Smith nor Dr. Puana stated Chandler could regain capacity for full-time employment as a result of weight loss, but rather that he would "benefit" from diet and exercise (Dr. Smith) and Chandler "needs to loose [*sic*] weight and [get] physical exercise" (Dr. Puana). Flores initially concluded that the results of his own examination of Chandler on February 12, 2010 "do not qualify [Chandler] for the critical physical demands of full-time, full duty work as School Custodian II, according to the job description used." It was not until he reviewed Dr. Smith's March 10, 2010 report that Flores offered the contrary conclusion, also on March 10, 2010, that if Chandler followed Dr. Smith's diet recommendations and completed extensive work conditioning, "more likely than not" Chandler would be able recover and resume full time, full duty work as School Custodian. Flores' readiness to reach a conclusion contrary to his earlier February 12, 2010 examination based on Dr. Smith's report

suggests that Flores' own medical examination was not completely reliable. The record does not support the ERS Board's contention that reports excluded by Hearings Officer Lee "mirror[s]" included evidence so as to demonstrate their exclusion from the record to be harmless error.

## IV. CONCLUSION

Therefore, we vacate the March 6, 2013 "Order Dismissing with Prejudice Appellant Joseph K. Chandler's Appeal" and the Final Judgment filed April 8, 2013 both entered in the Circuit Court of the First Circuit and remand this case for proceedings consistent with this opinion.

DATED: Honolulu, Hawai'i, December 31, 2013.

On the briefs:

Ted H.S. Hong
for Appellant-Appellant.

Patricia Ohara
Kyle K. Chang ·
Deputy Attorneys General
for Appellee-Appellee.

Presiding Judge

Associate Judge

Associate Judge

21